Ruth A. Tuttle and John W. Linehan, as Testamentary Trustees under the Will of Willis H. Tuttle, Deceased, Respondents, *v.* Irving T. Clark, Appellant.

Fourth Department, May 10, 1939.

*Kenneth B. Keating* [*Nicholas E. Brown* with him on the brief], for the appellant.

*James P. Donovan*, for the respondents.

SEARS, P. J.   The petitioners, as trustees, are the owners of a bond of certain persons not parties to this proceeding which is secured by a mortgage.   The defendant is the owner of the mortgaged premises by conveyance from the mortgagors.   The principal of the mortgage, $9,000, and interest from the 1st day of April, 1937, are unpaid.   The petitioners have paid, during the six months ending November 15, 1938, taxes amounting to an aggregate of $551.67 on the mortgaged premises.   The petitioners allege that during the six months previous to November 15, 1938, the date of their petition, the defendant has collected $570 rental from the mortgaged premises.   On these facts, pursuant to the provisions of section 1077-c of the Civil Practice Act, the petitioners have asked for an order requiring the payment to them of the entire amount of rental collected from the premises during the previous six months.   The answering affidavit of the defendant shows that the gross rental collected during the six months' period was $415, and that the sum of $10 was expended for repairs; that the mortgage interest during the six months' period was $225, and that the proportionate amount of taxes and assessments for the six months' period was $275.83.   The affidavit also shows that the defendant is not personally obligated to pay the mortgage debt and that he has offered to convey the mortgaged premises to the plaintiffs and that the offer has been refused.   The defendant asked that the proceeding be dismissed.

The Special Term accepted the defendant's figures as to the amount of rent collected and the expenses of repairs and entered an order directing the defendant to pay to the plaintiffs the sum of $405 within fifteen days.

Section 1077-c, so far as pertinent, is as follows: " Notwithstanding the foregoing provisions, any person who would otherwise have the right to foreclose a mortgage, shall have the right to make an application to any court in which such foreclosure action might be brought upon eight days notice, served personally, or in such manner as the court may direct to the last record owner of the mortgaged property, and if upon such application it shall appear to the satisfaction of the court that the mortgaged property during the six months prior to the application shall have produced a surplus

over and above the taxes, interest and all other carrying charges, then the court may make an order directing the payment of such surplus or such part thereof as the court may determine to the mortgagee to apply toward the reduction of any past due principal. In the event of default in making of such payment for thirty days after service of a copy thereof with notice of entry thereof, then and in such an event the applicant may maintain an action to foreclose such mortgage."

This section was originally enacted as part of the moratorium statute relating to mortgage foreclosures by chapter 793 of the Laws of 1933.

Section 1077-a, included in the same statute, suspended the right to foreclosure, and section 1077-b, also included in the statute, suspended the right to sue for the mortgage debt in case of defaults occurring only in the payment of principal, or installments of principal of the mortgage debt. The effect of these two sections is to forbid foreclosure of mortgages and suit for the mortgage indebtedness, when interest and taxes on the mortgaged premises are paid. The purpose of these sections is explained in *Matter of Pink* v. *Cord Meyer Co.* (279 N. Y. 236). Relating particularly to section 1077-c, the court, in the course of its opinion, said: " In providing a shield for the owner of the property against attacks of the mortgagee which might result in a sale of the property at much less than its real value, the Legislature took care to provide also that an owner who avails himself of the statutory protection against loss of his property might still be required to apply, in reduction of any past-due principal, any surplus income produced by the mortgaged property."

It is to be noted that the section provides for an order requiring payment by the last owner of the mortgaged premises and does not distinguish whether such person has received the income or whether it has been received by a predecessor in title or other person, and it also provides that in case of a failure for thirty days to pay to the mortgagee the surplus ordered paid, the terms of section 1077-a are no longer a protection against foreclosure.

The only question which seems to be directly raised on this appeal is whether the order provided for in section 1077-c for the payment of money is available to the mortgagee when there is no surplus beyond the amount of taxes and interest during the period, but where the taxes and interest have not been paid by the owner of the property.

We are of the opinion that sections 1077-a and 1077-c must be read together. Section 1077-a is, as the Court of Appeals says

in the language quoted, a shield to the mortgagor against fore-closure during the emergency declared by the Legislature to exist with its disturbed real estate market, but available only in case there is no default other than in the payment of principal or install-ments of principal. There is in section 1077-a no provision requiring the owner of the mortgaged premises to pay the interest out of the income which he received. The mortgagee, however, in case interest or taxes are not paid, may enforce all rights to foreclose or sue on the mortgage indebtedness as though the moratorium did not exist. Section 1077-c covers another situation. It relates to a surplus of income above what is necessary to pay taxes and interest. It was evidently thought unsuitable to allow the owner of the premises to use the shield of the moratorium and profit by surplus income. Therefore, section 1077-c provided that, if such a case occurred, the owner should be given the privilege of paying over such surplus to the mortgagee, or run the risk of foreclosure. Under sections 1077-a and 1077-c, the sanction to secure the payment of taxes, interest and surplus is the risk of foreclosure. The mort-gagee is fully protected against the moratorium by the defining limits of the provisions of section 1077-a in case of failure of the owner of the premises to pay taxes or interest. He needs no additional protection.

As the income of $405 during the six months previous to the application of the petitioners was less than enough to cover the amount of interest and taxes during the period, the petition should be denied.

The order providing for payment by defendant to the petitioners should be reversed on the law, without costs, and the motion should be denied, without costs. The appeal from the order denying resettlement should be dismissed, without costs, as academic in view of the determination of the other appeal.

All concur. Present — SEARS, P. J., CROSBY, LEWIS, TAYLOR and DOWLING, JJ.

Order entered January 11, 1939, reversed on the law, without costs of this appeal to any party, and motion denied, without costs. Appeal from order entered February 9, 1939, dismissed as academic in view of the decision of the other appeal.