In the Matter of DIME SAVINGS BANK OF BROOKLYN, Petitioner, against TILANO, INC., Respondent.

Supreme Court, Special Term, Kings County, April 7, 1944.

*John J. Mackey* for petitioner.

*Herbert Friedman* for respondent.

CUFF, J. This is a motion by petitioner (mortgagee) to require the mortgagor to submit for inspection its records showing, as

to the mortgaged premises, the receipts and disbursements for the calendar year 1943 so that it may be ascertained whether, in accordance with section 1077-c of the Civil Practice Act, there is a surplus for which petitioner could make application. The dispute arises over the period to be employed as the basis for determining if a surplus exists.

The mortgage was executed August 10, 1927. The mortgage moratorium provisions (Civ. Prac. Act, § 1077-a et seq.) have application. On August 6, 1940, the mortgage was extended in due form until August 6, 1943. Up to the latter date every obligation imposed by the mortgage was met by the mortgagor. From August 6, 1943, the mortgage has remained open. By this motion petitioner seeks to ascertain what surplus (see § 1077-c) accrued during 1943. The question immediately propounded is: May petitioner take into account the period (January 1st to August 6th) during which the demands of the mortgage were complied with? The answer is no. The statute (§ 1077-c) confers certain rights upon " any person who would otherwise have the right to foreclose " the mortgage. Petitioner would have a right " otherwise " to foreclose this mortgage because of the mortgagor's failure to discharge the principal debt on August 6, 1943. After defining the right (to the surplus) the statute provides that petitioner may apply to the court to discover if there is such surplus. Then the provision declares that for determining the surplus the period for calculating shall be the " preceding calendar year." The reasons for the presence of section 1077-c in the balanced legislation made necessary by the fall of real estate values during the depression are obvious and well known. (See Tuttle v. Clark, 257 App. Div. 87.) The intent of section 1077-c is to prevent the owner, resting comfortably behind the shield of the moratorium laws, from making a profit out of rents while at the same time ignoring his obligations to reduce or discharge principal. The operation of section 1077-a, which suspends foreclosure for default in installments on principal, would be unjust were it not forestalled by the remedial provisions of section 1077-c. None of the legislation under sections 1077-a to 1077-c has application unless and until there is a default. The mortgagor who meets his obligations is unaffected by those sections. " Default " is the fuse which sets the various provisions in operation. Under the law the mortgagor has the right to default on principal and installments and is rendered immune from foreclosure (§ 1077-a). When there is a default on principal or installments, where the mortgaged premises are rented, the mortgagee has a right to

all or a part of the profits derived from such renting. But that right is dependent upon the mortgagor's default. "We are of the opinion" said the Appellate Division in *Tuttle* v. *Clark* (257 App. Div. 87, 89, *supra*), "that sections 1077-a and 1077-c must be read together." The right to an account comes into being as an incident of the default. By reason of the default the mortgagor becomes obligated to account and to surrender his profits to the mortgagee. It follows that the mortgagee is entitled to those profits as they accrue after, not before, the default. The Legislature may not disturb the mortgagor in the peaceful enjoyment of his land or the profits derived therefrom, for the benefit of the mortgagee, during the period while the mortgagor meets his mortgage obligations. When the Legislature ordained that the basic period should be "the preceding calendar year," it could not have meant the calendar year preceding the default because it would lack the power to deal with such a period. It was intended to permit at least one year to expire following the default before invading the privacy of the mortgagor's accounts. In order to provide an equitable accounting by recent amendment it named the calendar year with its four seasons as the basic period. Then to meet a hardship it clothed the court with power to order the account for "twelve months other than the calendar year," but always for the period following the default. Petitioner's objection is that such interpretation permits the mortgagor to dissipate the surplus while the mortgagee stands helplessly by. The court's order will not take into account whether the mortgagor still has the surplus. That situation is presented in each application of this kind. The motion, prematurely brought, is denied, with leave to renew after August 6, 1944.